UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCHER WESTERN CONTRACTORS, LLC, a Delaware Limited Liability Company,<br><br>  Plaintiff,<br><br>v.<br><br>INTERNATIONAL FIDELITY INSURANCE COMPANY, a New Jersey corporation,<br><br>  Defendant. | Case No.: 16-CV-1494 JLS (BGS)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; AND (2) DENYING MOTION TO STRIKE**<br><br>(ECF No. 7) |

Presently before the Court is Defendant International Fidelity Insurance Company's Motion to Dismiss Count I Pursuant to Rule 12(b)(6) or, in the Alternative, Motion to Strike Count I Pursuant to Rule 12(f). ("MTD," ECF No. 7.) Also before the Court are Plaintiff Archer Western Contractors, LLC's Response in Opposition to Defendant's Motion, ("Opp'n," ECF No. 9), and Defendant's Reply in Support of its Motion, ("Reply," ECF No. 10). The Court vacated the hearing on Defendant's MTD pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 11.) After considering the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss and **DENIES** Defendant's alternative Motion to Strike.

///

# BACKGROUND

On or around July 7, 2011, Plaintiff entered into a written Subcontract Agreement (the "Subcontract") with Allied Industries, Inc. ("Allied") in connection with a project commonly known as the Point Loma WWTP Grit Processing Improvement Project located in San Diego, CA (the "Project"). (Complaint ("Compl.") ¶ 5, ECF No. 1.) The City of San Diego is the owner of the Project, and Plaintiff is its general contractor. (*Id.*) Allied served as a subcontractor to Plaintiff pursuant to the Subcontract. (*Id.*)

Allied was contractually required to provide payment and performance bonds guaranteeing its performance of the work under the Subcontract. (*Id.* ¶ 6.) To that end, Defendant issued a Subcontractor Performance Bond on or around August 18, 2011, identified by Bond No. SU0567272 (the "Performance Bond") for Allied as principal and Plaintiff as obligee. (*Id.* ¶ 7.) Defendant issued a Subcontractor Labor and Material Payment Bond, dated on or about September 14, 2011, identified by Bond No. SU0567272 (the "Payment Bond") for Allied as principal and Plaintiff as oblige. (*Id.* ¶ 8.) Allied's Subcontract amount was originally set at $334,450, but was later increased pursuant to one or more executed change orders to $519,691. (*Id.* ¶¶ 9–10.) From late 2012 through 2013, Allied's work on the Project grew progressively slower, and Allied ultimately abandoned the Project, thus allegedly breaching the Subcontract. (*Id.* ¶¶ 11–12.)

On or about April 11, 2013, Plaintiff sent Allied and Defendant notice that Allied was allegedly in default of the Subcontract. (*Id.* ¶ 13.) This correspondence advised Allied and Defendant that Plaintiff would proceed to mitigate damages through remedies available to Plaintiff under the Subcontract. (*Id.* ¶ 14.) On or about April 26, 2013, Plaintiff submitted a claim on the Bonds to Defendant. (*Id.* ¶ 15.) Defendant allegedly breached the terms of the Bond by, among other things, failing to perform according to the Bond. (*Id.* ¶ 16.) Defendant also allegedly attempted to impose pre-conditions on Plaintiff which were not authorized on the part of Defendant under the terms of the Performance Bond. (*Id.* ¶ 29.) Plaintiff made multiple claims on the Bonds requesting Defendant's performance, but Defendant continued to fail and/or refuse to perform its obligations under the Bonds. (*Id.*

¶ 17.)

Allied filed for bankruptcy, so Plaintiff completed Allied's work as authorized by the terms of the Subcontract and the Bonds. (*Id.* ¶ 19.) To do so, Plaintiff hired other subcontractors, suppliers, and laborers to complete the work, thus incurring extended overhead as a result of the delays caused by Allied's breach of the Subcontract. (*Id.* ¶ 20.) Specifically, the Project was delayed by 108 days solely as a result of the delay caused by Allied, which caused Plaintiff $437,616 in extended general overhead costs. (*Id.* ¶ 21.) The Project is also subject to liquated damages of $1,000 per day, thus causing Plaintiff liability of an additional $108,000. (*Id.*) In total, Plaintiff is exposed to at least $1,007,203 in damages and losses. (*Id.* ¶ 22.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible

when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

The Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

Plaintiff brings two causes of action against Defendant: (1) Recovery on Performance Bond, (Compl. ¶¶ 24–42, ECF No. 1), and (2) Claim on Payment Bond, (*id.* ¶¶ 43–54). Defendant only seeks to dismiss Plaintiff's first cause of action. Accordingly, the Court considers Plaintiff's claim for recovery on the Performance Bond.

Plaintiff alleges that Defendant breached its obligations under the Performance Bond by failing to timely elect one of its various options under the contract within fifteen days of receiving a notice of default. (Compl. ¶ 26, ECF No. 1.) Defendant also allegedly attempted to impose pre-conditions on its performance under the Performance Bond that were not permitted under the contract. (*Id.* ¶ 29.) Thus, Plaintiff seeks $1,007,203 on the Performance Bond, which is more than the penal sum limit of the Performance Bond because it accounts for Defendant's independent violations of the contract, or a minimum of $519,961 if the penal sum limit is enforceable. (*Id.* ¶ 38.)

Defendant argues that the Court should dismiss or strike Plaintiff's contention that Defendant is liable for more than the penal sum limit of $519,961[1] under the Performance Bond. (MTD 4,[2] ECF No. 7-1.) Specifically, Defendant argues that under California law the surety's liability is limited to the amount of its bond, and that the limited exception to the rule does not apply in this case. (*Id.* at 5–7.) Defendant argues that under California law its maximum potential liability to Plaintiff under the Performance Bond is the penal sum limit, which is either $334,450 or $519,961. (*Id.* at 4–6; *see also id.* at 5 (citing *Caron v. Andrew*, 133 Cal. App. 2d 402, 410 (1955) ("Upon breach by the principal, the surety is, unless otherwise specifically provided in the contract, free to rest upon the contract of suretyship and if it does it cannot be held beyond the limit of its bond and it may invoke any defense open to it as surety.")).)

Defendant's reliance on *Caron* is misplaced. The *Caron* Court held that a surety who elects to step into the shoes of another may, by so doing, be liable for costs beyond what it had limited itself to in the surety contract. 133 Cal. App. 2d at 411. Specifically, the Court explained that

> [u]pon breach by the principal, the surety is, unless otherwise specifically provided in the contract, free to rest upon the contract of suretyship and if it does it cannot be held beyond the limit of its bond and it may invoke any defense open to it as surety. If, however, upon breach by the principal it elects to and is permitted under the contract or by permission obtained after breach to step into the place of its principal and perform that principal's contract, it then makes itself subject to the principal's liabilities.

*Id.* at 410–11. But this is not, as Defendant suggests, the only "limited exception to the general rule that a surety's liability is limited to the penal sum of its performance bond." (MTD 6, ECF No. 7-1.) While this is *an* exception, *Caron* does not explicitly hold that it is the *sole* exception.

---

[1] Assuming Plaintiff can prove that the limit was properly increased. (MTD 4, ECF No. 7-1.)

[2] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

And even if this is the sole exception, Defendant's argument misses the mark. Plaintiff is not arguing that Defendant is liable for additional damages based on its performance—whatever it was—under the contract. Rather, Plaintiff argues that Defendant is liable because it did *not* perform under the contract (i.e., it independently breached the contract by not electing one of its many options under the Performance Bond upon learning of Allied's breach). Thus, *Caron*'s holding that a surety is "free to rest *upon the contract* of suretyship *and if it does* it cannot be held beyond the limit of its bond and it may invoke any defense open to it as a surety," 133 Cal. App. 2d at 410 (emphases added), does not foreclose Plaintiff's claim. As discussed, Plaintiff alleges that Defendant did *not* "rest upon the contract." And Defendant provides no authority holding that a surety cannot be liable for its independent breach of a contract, through nonperformance or otherwise.[3] Without more, the Court declines to hold that Plaintiff fails to state a claim for additional damages flowing from Defendant's alleged independent breach of the Performance Bond based on *Caron*.

In its Reply, Defendant argues that (1) it did make an election under the Performance Bond, (Reply 2, ECF No. 10); (2) there is no California authority supporting the proposition that a penal sum is waived after a surety makes an election under the bond, (*id.* at 4); and (3) Plaintiff's position is inconsistent with the express terms of the Performance Bond, (*id.*).

/ / /

---

[3] To be sure, Defendant cites California Code of Civil Procedure section 996.470 for the proposition that "[t]he aggregate liability of a surety to all persons for all breaches of the condition of a bond is limited to the amount of the bond." (MTD 5, ECF No. 7-1.) "This language, however, refers only to liability for 'breaches of the condition of the bond.' It does not limit liabilities of a surety which are imposed by statute rather than for breach of the condition of the bond." *Harris v. Nw. Nat'l Ins. Co.*, 6 Cal. App. 4th 1061, 1065 (1992); *see also Gen. Ins. Co. v. Mammoth Vista Owners' Ass'n*, 174 Cal. App. 3d 810, 827 n.10 (Ct. App. 1985). It may be that Plaintiff will be unable to support its requested relief under even *Harris* and similar cases, but at this stage the Court declines to dismiss Plaintiff's claims without further authority from Defendant demonstrating the futility of Plaintiff's claims in view of section 996.470.

Defendant's first two arguments are unconvincing. Defendant's assertion that it did, in fact, make an election under the Performance Bond is irrelevant at the motion to dismiss stage, since Plaintiff's Complaint alleges that Defendant did not do so. Thus, it is irrelevant that Plaintiff identifies no California authority supporting the proposition that a penal sum is waived after a surety makes an election under the bond—here, Plaintiff alleges that Defendant *did not* make an election.

But Defendant's reliance on the express terms of the Performance Bond has more force. "In general, a surety bond is interpreted by the same rules as other contracts. That is, we seek to discover the intent of the parties, primarily by examining the words the parties have chosen." *First Nat'l Ins. Co. v. Cam Painting, Inc.*, 173 Cal. App. 4th 1355, 1365 (2009) (citations omitted). "The extent of the surety's liability must be gathered from the language used when read in the light of the circumstances surrounding the transaction." *Id.*

Paragraph 6(b) of the Performance Bond states that the Surety shall be liable for "[t]he responsibilities of the Subcontractor for additional legal and design professional costs resulting or arising from the Subcontractor's default, or resulting or arising from the actions *or failure to act* of the Surety under Paragraph 4 herein." (Performance Bond ¶ 6(b),[4] ECF No. 1-3 (emphasis added).) Paragraph 4 discusses the various options that the Surety "shall" elect to pursue once the Obligee has declared the Subcontractor to be in default, which are the options Plaintiff alleges Defendant failed to elect. (*See id.* ¶ 4.) Critically, Paragraph 6(d) states that "[t]he Surety's liability under this Paragraph 6 shall not exceed, in the aggregate, the penal sum set forth on the cover page of this Bond, subject to Paragraph 2." (*Id.* ¶ 6(d).) Thus, under the plain terms of the Performance Bond, it

---

[4] The Court may consider documents incorporated by reference and matters of judicial notice without converting Defendant's MTD into a motion for summary judgment. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Accordingly, the Court considers Exhibits A (Subcontract, ECF No. 1-2), B (Performance Bond, ECF No. 1-3), C (Payment Bond, ECF No. 1-4), D (Notice of Default, ECF No. 1-5), and E (Bond Claim, ECF No. 1-6) incorporated by reference and therefore treats them as part of the Complaint. *Ritchie*, 342 F.3d at 908; *see also City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1059 (N.D. Cal. 2012).

appears that Defendant, as surety, cannot be liable for more than the penal sum based on its nonperformance (i.e., failure to elect an option under Paragraph 4), at least regarding "additional legal and design professional costs." Nevertheless, the Court recognizes that Plaintiff also alleges that Defendant somehow interfered with the terms of the contract by wrongfully imposing preconditions on its performance, (*see* Compl. ¶ 29, ECF No. 1), which is behavior that does not appear to be covered by the liability provisions of Paragraph 6(b) or any other. In addition, Defendant makes this argument on the terms of the Performance Bond in its Reply, and thus the Court does not have the benefit of Plaintiff's position on this matter.[5] Thus, while the Court entertains some concerns about Plaintiff's ability to state a claim for damages above the penal sum for Defendant's alleged failure to perform under Paragraph 4 of the Performance Bond, the Court will grant Plaintiff leave to amend its Complaint.

Finally, Defendant argues that Plaintiff cannot rely on California Insurance Code section 790.03 or its subsequent regulations[6] to support its first cause of action. (Reply 6, ECF No. 10.) Specifically, Defendant argues that the California Supreme Court has held that such violations do not give rise to a private right of action. (*Id.* (citing *Moradi-Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal. 3d 287, 287 (1988); *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 50–51 (1999)).)

The Court agrees. After exhaustively considering the history behind section 790 and its own prior decision in *Royal Globe Insurance Company v. Superior Court*, 23 Cal. 3d 880 (1979), the California Supreme Court in *Moradi-Shalal* reversed its *Royal Globe* decision and held that "[n]either section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed

---

[5] For instance, Plaintiff may have argued (and indeed may yet still argue) that "additional legal and design professional costs" under Paragraph 6(b) do not cover the sorts of damages it seeks to recover as a result of Defendant's nonperformance.

[6] Plaintiff argues that Defendant's conduct runs afoul of "California Code of Regulations, Title 10, Chapter 5, Subchapter 7.5, Article 1, Fair Claims Settlement Practices Regulations." (Compl. ¶ 34, ECF No. 1.)

in section 790.03, subdivision (h)." 46 Cal. 3d at 304. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiff's first cause of action insofar as it is based on California Insurance Code section 790.03 and its subsequent regulations.

However, the California Supreme Court has more recently held "that *Moradi–Shalal* does not preclude first party UCL actions based on grounds independent from section 790.03, even when the insurer's conduct also violates section 790.03." *Yanting Zhang v. Superior Court*, 57 Cal. 4th 364, 369 (2013). Nor has Defendant provided any authority suggesting that Plaintiff's other legal basis in support of its first cause of action[7] is barred as a matter of law. (*See* Compl. ¶ 34, ECF No. 1.) Thus, without more, at this juncture the Court declines to hold this additional cause of action barred as well.

## CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss (ECF No. 7) and **DISMISSES WITH PREJUDICE** Plaintiff's claim under California Insurance Code section 790. The Court **DISMISSES WITHOUT PREJUDICE** the remainder of Plaintiff's Complaint. The Court also **DENIES** Defendant's alternative Motion to Strike. Consistent with this Order, Plaintiff may amend its Complaint to divide its first cause of action to account for the differences between its legal theory for recovery on the Performance Bond (i.e., the penal sum) and what is ostensibly a claim for damages flowing from Defendant's independent breach of the

/ / /
/ / /
/ / /
/ / /
/ / /

---

[7] Plaintiff also argues that Defendant's conduct violated California Business & Professions Code section 17200. (Compl. ¶ 34, ECF No. 1.)

Performance Bond.[8] Plaintiff **SHALL FILE** an amended complaint, if any, <u>on or before fourteen (14) days from the date on which this Order is electronically docketed</u>.

      **IT IS SO ORDERED.**

Dated: March 6, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

---

[8] This includes Plaintiff's claim that Defendant is liable for its nonperformance under the Performance Bond, though, as discussed above, such a claim may be barred by Paragraphs 4 and 6 of the Performance Bond. It also includes Defendant's alleged violations under other California law, as set forth in Paragraph 34 of Plaintiff's Complaint.